**S.K.C., Appellee**

v.

**J.L.C., Appellant.**

Superior Court of Pennsylvania.

Argued April 1, 2014.

Filed June 19, 2014.

Bradley G. Olson, Jr., Ellwood City, for appellant.

Joann M. Jofery, Sharon, for appellee.

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

OPINION BY OLSON, J.:

J.L.C. ("Father") appeals from the order of the Court of Common Pleas of Mercer County ("trial court") entered on December 5, 2012. The trial court concluded that it retained exclusive, continuing jurisdiction over a dispute between Father and S.K.C. ("Mother") regarding the custody of K.L.C. ("Child"). The trial court also determined that Mercer County was not an inconvenient forum for the child custody dispute. We affirm.

The factual background of this case is as follows. Child was born in May of 2000. From her birth until May 2012, Child's primary residence was in Mercer County. During the later portion of that time, however, Father, Mother, and Child spent several months during each year in Moffet, Canada (in the province of Quebec) where Father and Mother managed a hunting lodge. From May 2012 to the present,

Child has resided in Moffet with Father. Father is currently employed while Mother is unemployed and resides in Mercer County. Moffet is approximately a ten hour drive from Mercer County.

Child attended first through fourth grades in the Commodore Perry School District in Mercer County. She attended Pennsylvania Cyber Charter School for fifth and sixth grades. In or around August 2012, the Pennsylvania Cyber Charter School determined that Child was no longer residing in Pennsylvania and did not permit her to re-enroll for seventh grade. Child has since been attending school in Quebec.

The procedural history of this case is as follows. On November 30, 2011, Mother filed a complaint in divorce which included a complaint for custody. At all relevant times, the divorce proceeding was still ongoing in Mercer County and there was no custody or divorce proceeding pending in any other court, either in the United States or Canada. On June 14, 2012, the trial court entered a consent custody order that was drafted by counsel for Father. The consent order granted Father primary physical custody of Child and gave Mother physical custody the first week of each month and certain holidays. The order also included a forum selection clause that chose the trial court as the proper venue for any further custody dispute.

On October 22, 2012, Mother filed a petition to modify the stipulated child custody order. On October 31, 2012, Father filed a motion requesting that the trial court relinquish jurisdiction of the parties' custody dispute. Father sought to have the case heard in the courts of Quebec.[1] The trial court denied the motion on December 5, 2012. Father filed a notice of appeal from that order which this Court quashed as premature. *S.K.C. v. J.L.C.*, 15 WDA 2013 (Feb. 7, 2013) (*per curiam*). On November 7, 2013, the trial court amended its order of December 5, 2012 and certified that a substantial issue of venue or jurisdiction is present. *See* Pa. R.A.P. 311(b)(2). This timely appeal followed.[2]

Father presents two issues for our review:[3]

1. Whether the trial court abused its discretion and committed [an] error of law when it denied [Father's] [m]otion to [r]elinquish [j]urisdiction pursuant to 23 Pa.C.S.A. § 5422?

2. Whether the trial court abused its discretion and committed [an] error of law when it denied [Father's] [m]otion to [r]elinquish [j]urisdiction pursuant to 23 Pa.C.S.A. § 5427?

Father's Brief at 3.

■ Both of Father's issues require us to interpret a statute, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").[4] As such, we are

---

1. We note that, "A court of this Commonwealth shall treat a foreign country as if it were a state of the United States for the purpose of applying" the Uniform Child Custody Jurisdiction and Enforcement Act's jurisdictional provisions. 23 Pa.C.S.A. § 5405(a). Thus, we treat Quebec, a Canadian province, as though it were a state of the United States.

2. On November 19, 2013, Father filed a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(a)(2)(i). On December 9, 2013, the trial court issued a statement in lieu of an opinion which adopted the reasoning set forth in the trial court's January 24, 2013 Rule 1925(a) opinion filed in response to Father's first appeal. All issues raised on appeal were included in Father's concise statement.

3. Father's brief originally contained three issues; however, he withdrew the second issue. Thus, we have re-numbered issue three as issue two.

4. As we have explained:

guided by the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq. See Commonwealth v. Raban,* —— Pa. ——, 85 A.3d 467, 475 (2014). "[O]ur paramount interpretative task is to give effect to the intent of our General Assembly in enacting the" UCCJEA. *Commonwealth v. Warren,* 84 A.3d 1092, 1095 (Pa.Super.2014) (citation omitted). When interpreting a statute, "[o]fficial comments may be consulted in the construction of the original provisions of the statute if the comment was published or generally available prior to the consideration of the statute by the legislature." *Commonwealth v. Berryman,* 437 Pa.Super. 258, 649 A.2d 961, 966 (1994), *appeal denied,* 541 Pa. 632, 663 A.2d 685 (1995). "Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." *Co. Image Knitware, Ltd. v. Mothers Work, Inc.,* 909 A.2d 324, 333 n. 9 (Pa.Super.2006), *appeal denied,* 593 Pa. 733, 929 A.2d 645 (2007), *quoting* 1 Pa.C.S.A. § 1927.

■ Father first contends that the trial court lacked subject matter jurisdiction because it did not have "exclusive, continuing jurisdiction" to consider the custody matter. *See* Father's Brief at 9–15. Before we address the merits of Father's claims, we begin with a discussion of the appropriate standard and scope of review when considering an appeal from a decision rendered under 23 Pa.C.S.A. § 5422, which establishes the trial court's exclusive, continuing jurisdiction to make a child custody determination. It is hornbook law that "as a pure question of law, the standard of review in determining whether a [trial] court has subject matter jurisdiction is *de novo* and the scope of review is plenary." *Beneficial Consumer Disc. Co. v. Vukman,* 621 Pa. 192, 77 A.3d 547, 550 (2013) (citation omitted). However, when discussing our standard of review in other cases arising under section 5422, we have often stated that "this Court will not disturb a decision to exercise or decline jurisdiction absent an abuse of discretion by the trial court." *Billhime v. Billhime,* 952 A.2d 1174, 1176 (Pa.Super.2008) (citation omitted).

■ This language is accurate in that, when a trial court possesses subject matter jurisdiction over a child custody dispute, a trial court's decision to exercise that jurisdiction is subject to an abuse of discretion standard of review. However, we have imprecisely quoted this language even when the question was not whether the trial court properly exercised (or declined to exercise) jurisdiction, but rather the question was whether the trial court

The UCCJEA, 23 Pa.C.S.A. § 5401, *et seq.,* was promulgated by the National Conference of Commissioners on Uniform State Laws in 1997 and became effective in Pennsylvania in 2004. The UCCJEA replaced the Uniform Child Custody Jurisdiction Act ("UCCJA") as a way to rectify inconsistent case law and revise custody jurisdiction in light of federal enactments. One of the main purposes of the UCCJEA was to clarify the exclusive, continuing jurisdiction for the state that entered the child custody decree.
*Rennie v. Rosenthol,* 995 A.2d 1217, 1220 (Pa.Super.2010) (citations omitted).

In 2013, the Uniform Law Commission (successor to the National Conference of Commissioners on Uniform State Laws) proposed amendments to the UCCJEA that would comply with the Hague Convention on Jurisdiction, Applicable Law, Recognition, Enforcement and Cooperation in Respect of Parental Responsibility and Measures for the Protection of Children. *See* 35 I.L.M. 1391. However, the Uniform Law Commission has yet to present those amendments to the states because the United States Senate has yet to ratify the convention. *See In re T.L.B.,* 272 P.3d 1148, 1156 (Colo.App.2012).

actually possessed subject matter jurisdiction.

The UCCJEA establishes subject matter jurisdiction before the courts of common pleas in child custody matters under various subsections of Title 23, including 23 Pa.C.S.A. §§ 5421[5] and 5422.[6] As the provision quoted below makes clear, section 5421 identifies the circumstances under which a court of common pleas has jurisdiction to make an initial child custody determination. Pursuant to section 5421(b), section 5421(a) is the exclusive jurisdictional basis for making an initial child custody determination by a court of this Commonwealth.

Section 5422(a) identifies the circumstances under which a court which has

5. Section 5421 provides jurisdiction for a trial court to make an initial custody determination. It provides that:

 (a) General rule.—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:
 (1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;
 (2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:
 (i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and
 (ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;
 (3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or
 (4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3).
 (b) Exclusive jurisdictional basis.—Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.
 (c) Physical presence and personal jurisdiction unnecessary.-Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination.
 23 Pa.C.S.A. § 5421 (emphasis removed).

6. Section 5422 provides for jurisdiction after a court has already made an initial custody determination. It provides that:

 (a) General rule.—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:
 (1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or
 (2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.
 (b) Modification where court does not have exclusive, continuing jurisdiction.—A court of this Commonwealth which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under section 5421.
 23 Pa.C.S.A. § 5422 (emphasis removed).

made a child custody determination under section 5421 or section 5423 [7] retains exclusive, continuing jurisdiction over that order. Under section 5422(a), a court which has made a child custody determination under section 5421 or section 5423 retains exclusive, continuing jurisdiction over that determination until the elements of section 5422(a)(1) or section 5422(a)(2) have been satisfied. Section 5422(b) states that if the trial court has made a child custody determination, but no longer has exclusive, continuing jurisdiction under section 5422(a), it may modify that determination if it has jurisdiction to make an initial custody determination under section 5421. From our review of the statutory language, it is evident that a section 5422 determination does not involve a trial court's decision regarding whether to exercise jurisdiction that has been established. Rather, a section 5422 determination implicates the subject matter jurisdiction of the trial court.

■ We recognized this distinction previously in *B.J.D. v. D.L.C.*, 19 A.3d 1081 (Pa.Super.2011). In *B.J.D.*, we applied a *de novo* standard of review when examining an order to stay custody proceedings in Pennsylvania. *Id.* at 1082. In *B.J.D.*, the trial court stayed custody litigation in Pennsylvania after the child and both parents relocated outside the Commonwealth and further directed the parties to pursue their custody action in Oklahoma. We held that the trial court did not have exclusive, continuing jurisdiction under section 5422. Therefore, it could not direct the parties to litigate their custody dispute in Oklahoma. We stated that it was "an appeal from an order to transfer custody jurisdiction, not an appeal from an order to exercise or decline jurisdiction, which would be subject to an abuse of discretion

standard." *Id.* at 1082 n. 1 (citation omitted). Because in this case Father challenges the trial court's jurisdiction under section 5422, we agree with the standard and scope of review as set forth in *B.J.D.* Therefore, we hold that a trial court's decision that it possesses subject matter jurisdiction under section 5422 is purely a question of law. As such, our standard of review is *de novo* and our scope of review is plenary.

Turning to the merits of Father's first issue, Father contends that intervening changes such as his and Child's relocation to Canada and Child's enrollment in a Canadian school divested the trial court of exclusive, continuing jurisdiction under section 5422(a)(1). He argues that Child's presence in Canada made her connection with this Commonwealth insignificant. He further argues that substantial evidence relating to the child custody proceedings no longer exists in this Commonwealth. The trial court denied relief and held, relying upon our decision in *A.D. v. M.A.B.*, 989 A.2d 32 (Pa.Super.2010), that a forum selection clause precludes a party from challenging jurisdiction under section 5422.

Although we conclude that the trial court retains exclusive, continuing jurisdiction in this case, we find that the trial court's reliance on *A.D.* was misplaced. In *A.D.*, the contested agreement provided that:

> In the event that [f]ather does wish to petition to see [c]hild in the future, as specified in the time frame above, he may do so in Philadelphia. If for any reason it is necessary for [m]other to return to Philadelphia to participate in the litigation, then [f]ather agrees to pay for [m]other's travel costs.

---

**7.** Section 5423 provides jurisdiction for a trial court to modify a child custody determination

made by a tribunal in a different state.

*Id.* at 34 (internal alteration and ellipsis omitted). We concluded that this provision was only permissive in nature, allowing for the father to petition in Philadelphia, but not requiring a petition be filed there. *Id.* at 37. Thus, we held that the agreement in question was not a forum selection clause. *Id.*

■ We then acknowledged that a forum selection clause is but one of eight factors that must be considered when determining whether a Pennsylvania forum is inconvenient under section 5427. *See id.* at 37–38. We did not hold that a forum selection clause was dispositive for purposes of section 5422. In fact, neither this Court nor our Supreme Court has ever held that a forum selection clause is dispositive for purposes of section 5422. Today, for the reasons that follow, we hold that a trial court may not consider a forum selection clause in its section 5422 analysis.

The comments to the UCCJEA were published in 1997—seven years prior to the General Assembly's enactment of the law.[8] Thus, it is proper for us to consider those comments when interpreting the UCCJEA. *See Berryman,* 649 A.2d at 966. The comment to section 5421 states, in relevant part, that "since jurisdiction to make a child custody determination is subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under th[e UCCJEA] is ineffective." 23 Pa.C.S.A. § 5421 cmt. This comment is clear—two parents may not agree, via a forum selection clause, to litigate their child custody dispute in a court that lacks subject matter jurisdiction under the UCCJEA.

Other sections of the UCCJEA also support a conclusion that a forum selection clause may not be considered for purposes of determining subject matter jurisdiction under section 5422. Section 5427, which we discuss in more detail below, has a special provision relating to forum selection clauses. In particular, it provides that a forum selection clause is one of eight factors to be considered by a trial court when determining if a particular venue is inconvenient. *See* 23 Pa.C.S.A. § 5427(b)(5).

■ Although in adopting section 5427 the General Assembly has declared that a forum selection clause is one of eight factors to be considered when determining if a forum is inconvenient, we discern no basis within the legislative scheme of the UCCJEA upon which we could conclude that a forum selection clause may be regarded as dispositive in establishing jurisdiction under section 5422. Our conclusion is also consistent with the law of this Commonwealth that an "agreement of the parties will [not] confer jurisdiction where it otherwise would not exist." *In re Estate of Cantor,* 424 Pa.Super. 24, 621 A.2d 1021, 1022 (1993) (citation omitted); *Transp. Servs., Inc. v. Underground Storage Tank Indemnification Bd.,* 67 A.3d 142, 152 n. 15 (Pa.Cmwlth.2013) (citation omitted).

Allowing parents to confer subject matter jurisdiction on the courts of this Commonwealth in child custody disputes via a forum selection clause would be antithetical to the purposes of the UCCJEA. The UCCJEA has been adopted by every state in this country, other than Massachusetts, in order to permit the best situated court to exercise jurisdiction in child custo-

---

8. The UCCJEA was proposed by the National Conference of Commissioners on Uniform State Laws in 1997. The proposed UCCJEA included not only the text of the proposed uniform statute, but also comments thereto.

When our General Assembly adopted the UCCJEA, seven years after it was proposed, it also adopted both the statute and the comments thereto.

dy matters. Under the trial court's view, the child and one parent could be residing in Alaska while the other parent could be residing in Florida and only Pennsylvania courts would have exclusive, continuing jurisdiction if they had entered into a forum selection clause which so stipulated.

We also find instructive the decisions of courts in other jurisdictions that have considered this question. *See* 1 Pa.C.S.A. § 1927. In *Friedman v. Eighth Judicial Dist. Court of State, ex rel. Cnty. of Clark*, 264 P.3d 1161 (Nev.2011), the Supreme Court of Nevada discussed a forum selection clause and UCCJEA § 202.[9] The court determined that the forum selection clause was not dispositive with respect to a UCCJEA § 202 analysis. *Id.* at 1168. To the contrary, it found that a forum selection clause had no role to play in determining whether a court had subject matter jurisdiction under UCCJEA § 202. *Id.* The court recognized the role that a forum selection clause has under UCCJEA § 207;[10] however, it noted, as we have above, that UCCJEA § 207 is different because UCCJEA § 207 lists forum selection clauses as a factor to be considered and addressed when a court is asked whether it should (or should not) exercise jurisdiction that it already possesses, whereas UCCJEA § 202 confers jurisdiction on the trial court. *Id.* at 1167–1168.

The Court of Appeals of Texas–Waco Division has likewise held that parties may not confer upon a court subject matter jurisdiction under UCCJEA § 202. In *In re A.C.S.*, the court held that a party may not consent to exclusive, continuing jurisdiction under UCCJEA § 202. 157 S.W.3d 9, 15 (Tex.App.2004). Instead, the court determined that the trial court must make an independent determination of whether it possesses exclusive, continuing jurisdiction pursuant to UCCJEA § 202. *Id.*

For these reasons, we hold that a forum selection clause may not be considered by a trial court when determining if it possesses exclusive, continuing jurisdiction under section 5422. Instead, a trial court must make an independent evaluation of the facts to determine if the requirements of either subsection 5422(a)(1) or 5422(a)(2) have divested the trial court of exclusive, continuing jurisdiction over the child custody dispute.

Having determined that the trial court erred by relying upon the parties' forum selection clause to find exclusive, continuing jurisdiction under section 5422, we turn now to examine other grounds in assessing whether the trial court retained authority to make a custody determination in this case.[11]

Child was a resident of Pennsylvania on November 30, 2011, the date the original child custody proceeding commenced. Therefore, pursuant to section 5421(a)(1), the trial court had jurisdiction to make an initial custody determination. Less than

**9.** Pennsylvania has adopted section 202 of UCCJEA without substantive amendment. *Compare* UCCJEA § 202 *with* 23 Pa.C.S.A. § 5422.

**10.** Pennsylvania has adopted section 207 of UCCJEA without substantive amendment. *Compare* UCCJEA § 207 *with* 23 Pa.C.S.A. § 5427.

**11.** We only make this determination for the first time on appeal because of the extensive factual record developed in the trial court. With this extensive factual record, a *de novo* standard of review, and a plenary scope of review, we are unhampered by the lack of a trial court determination on the legal question of exclusive, continuing jurisdiction. Furthermore, this children's fast track issue has languished for over 18 months. In the interest of judicial economy we decline to remand the matter for the trial court to issue a new opinion.

one year later, Mother filed a petition to modify the trial court's initial custody determination. Father objected to the trial court exercising exclusive, continuing jurisdiction. He argued that the trial court was divested of jurisdiction pursuant to section 5422(a)(1). As we have explained:

> Under the plain meaning of section 5422(a)(1), [quoted above,] a court that makes an initial custody determination retains exclusive, continuing jurisdiction until neither the child nor the child and one parent or a person acting as a parent have a significant connection with Pennsylvania **and** substantial evidence concerning the child's care, protection, training, and personal relationships is no longer available here. The use of the term "and" requires that exclusive jurisdiction continues in Pennsylvania until both a significant connection to Pennsylvania and the requisite substantial evidence are lacking. In other words, Pennsylvania will retain jurisdiction as long as a significant connection with Pennsylvania exists or substantial evidence is present.

*Rennie v. Rosenthol*, 995 A.2d 1217, 1220–1221 (Pa.Super.2010) (emphasis in original; footnotes omitted).

▌ Neither this Court nor our Supreme Court has expressly determined at what time the trial court must evaluate the circumstances to determine if there exists a substantial connection between a child and this Commonwealth. Three possibilities appear to us: at the time the modification petition is filed; at the time the modification hearing is held; and at the time the trial court makes a final determination.[12] We conclude that the determination must be made based upon the factual circumstances as they existed at the time the modification petition was filed.

This interpretation is supported by the comment to section 5422, which reads, in pertinent part, "Jurisdiction attaches at the commencement of a proceeding. If state A had jurisdiction under this section at the time a modification proceeding was commenced there, it would not be lost by all parties moving out of the state prior to the conclusion of proceeding." 23 Pa. C.S.A. § 5422 cmt. If we permitted the determination to be made at any other point in time, it would give no effect to this comment. Under section 5422(a)(2), a court lacks exclusive, continuing jurisdiction if all parties move out of the Commonwealth. If this occurred during the proceedings, and if we allowed the section 5422 determination to be made based on the facts as they existed at either the modification hearing or when the trial court made its determination then our interpretation would compel the trial court to determine that it lost subject matter jurisdiction—contrary to the comment to section 5422.

We also believe that allowing the determination to be made at any other point in time would be problematic. Allowing the determination to be made at the time a hearing is held on the modification petition would provide an incentive for parents not residing within this Commonwealth to delay the proceedings to reduce any connection that the child would have with this Commonwealth. Moreover, allowing the decision to be made based upon the factual circumstances as they exist at the time the trial court makes its determination would encourage the trial court to make factual findings regarding changed circumstances

---

12. We use the term "modification petition" to refer to a petition filed with a court that maintains exclusive, continuing jurisdiction under section 5422. We do not use the term to refer to a petition filed with a court to modify a determination made in another jurisdiction, as is outlined in section 5423.

since the modification hearing occurred. On the other hand, requiring that the decision be made based upon the factual circumstances at the time the modification petition was filed avoids these problems.

Furthermore, courts in other jurisdictions that have considered the matter have likewise interpreted this comment to require that a section 5422 determination be made based upon the factual circumstances as they existed at the time the petition is filed. *E.g., Wahlke v. Pierce,* 392 S.W.3d 426, 429 (Ky.App.2013); *Nurie v. Rizvi (In re Marriage of Nurie),* 176 Cal.App.4th 478, 98 Cal.Rptr.3d 200, 212 (2009); *A.C.S.,* 157 S.W.3d at 16. For all of these reasons, we hold that, when making a determination under section 5422, the trial court must rely upon the factual circumstances as they existed when the modification petition was filed. Likewise, when reviewing a trial court's section 5422 determination, this Court must rely upon the facts as they existed at the time the modification petition was filed.

In this case, the modification petition was filed on October 22, 2012. Thus, we must evaluate the circumstances as of that date in order to determine if Child had a significant connection to Pennsylvania or substantial evidence was present in this Commonwealth.[13] On October 22, 2012, Child's custody was controlled by the trial court's order of June 14, 2012. That order provided that Father had primary physical custody of Child. While Father resided in Canada, Mother was to have custody of Child for the first week of each month and during holidays. Custody handoffs were to occur in Orillia, Ontario, Canada.[14]

We have held that "a significant connection [exists] where one parent resides and exercises parenting time in the state and maintains a meaningful relationship with the child." *Rennie,* 995 A.2d at 1222 (internal quotation marks omitted). We have found support for this interpretation from the decisions of courts in other jurisdictions. *See id.* at 1222 n. 6, *citing In re Forlenza,* 140 S.W.3d 373, 377 (Tex.2004); *Ruth v. Ruth,* 32 Kan.App.2d 416, 83 P.3d 1248, 1254 (2004); *Fish v. Fish,* 266 Ga. App. 224, 596 S.E.2d 654, 656 (2004).

In the case at bar, Mother testified that she exercised parenting time with Child in Pennsylvania as recently as May 2012. *See* N.T., 11/1/12, at 6. Mother did not have custody of Child in this Commonwealth between June and October of 2012. However, this was not because of a lack of effort on Mother's behalf. Mother drove to Orillia in order to effectuate her physical custody of Child during July 2012. *See id.* at 7–8, 15. Father did not appear to exchange custody of Child. *See id.* at 7–8.

 The trial court held Father in contempt of court for his failure to abide by the terms of the June 14, 2012 consent order regarding Child's custody. *See* Contempt Order, 11/1/12.[15] Thus, if we

---

13. At all relevant times, Mother has remained a resident of Pennsylvania. Therefore, the trial court was not divested of jurisdiction pursuant to section 5422(a)(2).

14. We take judicial notice that Orillia is a small city located approximately 85 miles north of Toronto, Ontario. It is located approximately halfway between Mother's residence in Pennsylvania and Father's residence in Moffet.

15. Father attempts to minimize the impact of this contemptuous behavior. *See* Father's Brief at 18 n. 7. However, his argument that Child would have only been present in Pennsylvania for two weeks over a seven month period if he would not have committed contempt is unpersuasive. First, the relevant period of time was only five months, from May 26, 2012 until the modification petition was filed on October 22, 2012. Second, Mother was entitled to custody during the first week of each month and, had Father complied with

were to conclude that Mother was not exercising parenting time with Child between June and October of 2012, then we would be rewarding Father's contempt. We refuse to incentivize contemptuous behavior on the part of a litigant. Contemptuous behavior should be punished, not rewarded. To reward contempt would undermine the very nature of the judicial process. We therefore conclude that Mother was exercising parenting time within this Commonwealth and maintained a meaningful relationship with Child notwithstanding the actual lack of parental custody time during Summer 2012. As such, Child had a significant connection with this Commonwealth. *See Rennie,* 995 A.2d at 1222.

Father relies upon *Billhime* in support of his contention that Child lacked a significant connection with this Commonwealth. However, Father's reliance on *Billhime* is misplaced for two reasons. First, a key tenet of the *Billhime* decision has subsequently been clarified by *Rennie.* In *Billhime* we stated that "the lack of a continuing 'significant connection' with the Commonwealth is established if the court finds that substantial evidence concerning the child's 'care, protection, training and personal relationships' is no longer available here." *Billhime,* 952 A.2d at 1176. However, in *Rennie* we clarified our reading of section 5422(a)(1) by noting that the plain language of the statute provides that jurisdiction is defeated where a significant connection with Pennsylvania no longer exists **and** substantial evidence relating to the child's care, protection, training, and personal relationships is no longer present within the Commonwealth. *Rennie,* 995 A.2d at 1223 n. 7.

Furthermore, Father's reliance on *Billhime* is misplaced because the factual circumstances in that case are distinguishable from those in the case at bar. In *Billhime,* the children visited Pennsylvania only three times per year. *Billhime,* 952 A.2d at 1177. In the case at bar, Child is in the Commonwealth over one dozen times a year—the first week of each month and during certain holidays. Thus, the connection between Child and Pennsylvania in the case at bar is much more "significant" than the connection between the children in *Billhime* and this Commonwealth.

Father also attempts to distinguish *Rennie* from the case at bar; however, *Rennie* presents a more apt analogy to this case than *Billhime.* In *Rennie* we held that there was a significant connection between the child and the Commonwealth for three separate reasons: the visitations that occurred in Pennsylvania; the relationship between the child and her family in Pennsylvania; and the child's relationship with her friends in Pennsylvania. *Rennie,* 995 A.2d at 1222 & n. 6. With respect to parental time in the Commonwealth, we noted that the father exercised parental time in Pennsylvania for a total of approximately one month every year. *Id.* at 995 A.2d at 1222. In the present case, Child spends over three months in Pennsylvania each year; hence, this case involves a stronger basis for finding jurisdiction in Pennsylvania than the facts before us in *Rennie.* By contrast, *Billhime* involved only three short visits per year. Thus, we conclude that *Rennie* supports our conclusion that there is a significant connection between Child and Pennsylvania.

Accordingly, we conclude that the trial court properly found that it possessed exclusive, continuing jurisdiction over the child custody dispute in this case pursuant

---

the consent order, Mother would have had

custody of Child more frequently.

to 23 Pa.C.S.A. § 5422.[16] *Cf. R.M. v. J.S.,* 20 A.3d 496, 506 n. 8 (Pa.Super.2011) (we may affirm the trial court's exercise of jurisdiction in a child custody dispute on any basis supported by the record).

Having determined that the trial court possessed subject matter jurisdiction, we turn to Father's argument that the trial court erred by choosing to exercise that jurisdiction. Under section 5427, a trial court may decline to exercise jurisdiction over a child custody dispute if it determines that it is an inconvenient forum. As noted above, we review a trial court's section 5427 determination for an abuse of discretion. *M.E.V. v. R.D.V.,* 57 A.3d 126, 129 (Pa.Super.2012) (citation omitted). Under section 5427, a trial court must consider the following eight factors when determining if it is an inconvenient forum:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this Commonwealth;

(3) the distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

23 Pa.C.S.A. § 5427(b)(1–8).

As to the first factor, the presence of domestic violence, the trial court found that, "Given the domestic violence and the [trial c]ourt's familiarity with domestic violence, the Court of Common Pleas of Mercer County is in a better position to protect [Mother]." Trial Court Opinion, 1/24/13, at 7. Father challenges the trial court's factual finding that there was domestic violence present in the relationship. We conclude that the record supports the trial court's findings with respect to the presence of domestic violence in the relationship.

Mother testified that "there was physical abuse [by Father.]" N.T., 12/3/12, at 10. She elaborated that Father "choked [her] several times, slapped [her] quite a few times. [She had black eyes.]" *Id.* at 11. Father contends that the lack of any complaints to the police or other supporting evidence makes this testimony unbelievable. However, whether Mother was telling the truth is a credibility determination best made by the trial court. It is not for us to determine, based on a cold record, whether Mother was testifying truthfully. Although the trial court may have taken the lack of a report into consideration when determining if Mother's testimony was credible, the lack of a report did not preclude the trial court from determining that there was a history of domestic violence. This was a credibility determi-

---

**16.** We note that this holding is also consistent with the Hague Convention on Jurisdiction, Applicable Law, Recognition, Enforcement and Cooperation in Respect of Parental Responsibility and Measures for the Protection of Children. Under the convention, a court retains jurisdiction over an international child custody dispute if it is in the process of adjudicating the parents' divorce. *See* Article 10, 35 I.L.M. 1391, 1398.

nation, best made by the trial court which witnessed Mother testify.[17]

Father also argues that there is no evidence that the trial court would be able to protect Mother from future domestic violence. However, the fact that there was domestic violence, and that the trial court is aware of this fact, puts the trial court in a better position to protect Mother from future domestic violence. Furthermore, as Mother will be exercising her custody of Child primarily in Mercer County, the trial court will be able to protect Mother immediately, and in several ways, while the Quebec courts would have to resort to contempt proceedings days, weeks, or months later. Thus, we conclude that the trial court's determination that there was a history of domestic violence and that it was in a position to protect Mother from future domestic violence was not an abuse of discretion.

As to the second factor, the length of time that Child has resided outside this Commonwealth, the trial court found that, "While [C]hild has resided outside of Mercer County for just over six months, her primary residence for the majority of her life was Mercer County, Pennsylvania." Trial Court Opinion, 1/24/13, at 7. Father contends that this is an abuse of discretion because Child had been residing in Canada for an extended period of time. We conclude that the trial court's finding is supported by the record.

Child was only able to attend her cyber charter school as long as she was a resident of this Commonwealth. Prior to the 2012–2013 school year, the school terminated Child's enrollment as it no longer considered her a resident of Pennsylvania. This determination was not made until two months prior to the modification petition being filed. *See* N.T., 12/3/12, at 21 (stating that the notification was made a couple of weeks prior to the beginning of school). Thus, this supports the trial court's determination that Child was residing in Pennsylvania until close to the end of the previous school year, *i.e.*, the end of May 2012.

Father argues that the evidence shows that for most of the prior 18 months Child had been in Canada. Although Child, Father, and Mother were all present in Canada for extended periods during 2011, there was no evidence that there were plans for Child to stay in Canada. Rather, the evidence suggests that Child's presence in Canada was temporary in duration and occasioned only by her parents' decision to pursue a business opportunity. Thus, the record supports the trial court's determination that Child was a resident of this Commonwealth until May 2012. We ascertain no abuse of discretion in the trial court's consideration of this factor.

As to the third factor, the distance between the available forums, the trial court found that, "The distance [between Moffet and Mercer County] is [ten] hours and is difficult for either party to deal with." Trial Court Opinion, 1/24/13, at 7. Father does not challenge this finding and we agree that the trial court did not abuse its discretion by finding that this factor was neutral.

■ As to the fourth factor, the relative financial circumstances of the parties,

---

**17.** We note that, "More often than not, female domestic violence victims do not report the abuse because they believe it is a private matter or for fear that the violence would intensify." Christina Samons, *Same–Sex Domestic Violence: The Need for Affirmative Legal Protections at All Levels of Government*, 22 S. Cal. Rev. L. & Soc. Just. 417, 420 (2013) (citation omitted); *see* Michelle J. Anderson, *Women Do Not Report the Violence They Suffer: Violence Against Women and the State Action Doctrine*, 46 Vill. L.Rev. 907, 910 (2001).

the trial court found that Father "is in a better financial position than [M]other given he is employed and she is not." Trial Court Opinion, 1/24/13, at 7. Father contends that this finding is not supported by the record because the trial court assessed Mother an "earnings capacity, based upon her degree and work experience" during the divorce proceedings. Father's Brief at 19. However, whether Mother had an earnings capacity based upon her degree and work experience is immaterial to the parties' financial circumstances as they existed at the time the modification petition was filed. The plain language of the statute refers to the relative financial circumstances of the parties, not their future earnings capacities. Thus, Father's reliance on the trial court's earnings capacity finding is misplaced.

Father also contends that there was no testimony that Mother could not afford to travel to Moffet for custody proceedings. Father ignores Mother's testimony that four months after she traveled to Ontario in July 2012 to effectuate custody of Child, she still owed her sister $521.27 for expenses related to the trip. N.T., 11/1/12, at 12. Likewise, Father's argument that Mother would have a free place to stay in Moffet is undermined by the fact that there would still be significant expense related to traveling to Moffet for court proceedings.

Furthermore, there is no evidence that courts in Quebec would permit Mother to participate via telephone. On the other hand, there is ample evidence that Father was permitted to participate in the trial court proceedings via telephone. Although the trial court later revoked this privilege, it was because Father's telephone connection failed. If Father had maintained a reliable phone connection, Father would have presumably been permitted to continue to appear via telephone. Thus, Fa-

ther's argument related to hardship from traveling to Mercer County is without merit. Accordingly, we conclude that the trial court did not abuse its discretion in its consideration of this factor.

As to the fifth factor, the existence of a forum selection clause, the trial court found that Father, "in June [2012], agreed that Mercer County would maintain jurisdiction pursuant to the ongoing custody proceedings." Trial Court Opinion, 1/24/13, at 7. Father contends that there were "changed circumstances" from June 2012 to October 2012. However, we find Father's argument unconvincing for a number of reasons. First, the plain language of the statute mandates that the trial court consider any forum selection clause when determining if it is an inconvenient forum. There is no exception within the statute for changed circumstances. Thus, under the plain terms of the statute, the existence of the forum selection clause weighed in favor of the trial court exercising its jurisdiction over this matter.

Next, Father contradicts himself. At one point in his brief Father argues that the forum selection clause was "recently agreed-upon." Father's Brief at 19. However, on the very next page of his brief, Father argues that the time elapsed between the agreement and the filing of Father's motion to relinquish jurisdiction was so great that there were changed circumstances that warranted the trial court to place little, if any, weight on the forum selection provision. *Id.* at 20–21. We agree with Father's first characterization of the agreement—it was recently agreed upon. Finally, the forum selection clause was drafted by Father's counsel and did not include any equivocal language relating to future changed circumstances. Accordingly, we conclude that the trial court did

not abuse its discretion in its consideration of the forum selection clause.

As to the sixth factor, the location of necessary evidence, the trial court found that "[t]here is substantial evidence in Mercer County to deal with the issue of custody given the family, the length of time [Child] has been there, and the fact [Child] was in school either directly or through cyber school up until September [2012]." Trial Court Opinion, 1/24/13, at 7. We agree with Father that this finding is not entirely supported by the record because certain evidence is most certainly available in Quebec. The record indicates that Child is currently living in Quebec and attending school in Quebec. The statute specifically enumerates Child's testimony as a type of evidence to be considered by the trial court and the trial court did not discuss this fact in its analysis.

However, Father's argument that this factor weighs in favor of the trial court relinquishing jurisdiction is likewise without merit. Instead, we conclude that this factor is neutral, and neither weighs in favor nor against the trial court relinquishing jurisdiction. Father attempts to mischaracterize the evidence of record with respect to this issue. It is undisputed that Child attended school within this Commonwealth until two months prior to the modification petition being filed. Father attempts to portray the cyber school as existing in cyberspace alone. However, as Father notes, Child's cyber school has offices in Beaver County—which is closer to Mercer County than it is to Moffet. Thus, Child's records and testimony relating thereto would be easily gathered by the trial court while it would take some effort for the courts of Quebec to retrieve this information. Furthermore, most of Child's prior classmates reside in this Commonwealth. Thus, any evidence relating to Child's former classmates would be more easily obtained by the trial court.

Accordingly, we conclude that some portions of this factor, such as Child's location and the location of Child's new friends, weigh in favor of the trial court relinquishing jurisdiction. However, other portions of this factor, such as evidence relating to Child's long-term school performance and Child's former classmates, weigh in favor of the trial court exercising jurisdiction. Thus, we conclude that this factor is neutral.

As to the seventh factor, the ability of the various courts to expeditiously resolve the matter, the trial court found that, "Given there are no custody proceedings in Canada and given th[e trial c]ourt has had several hearings involving custody, it's in a far better position to decide the issue expeditiously." Trial Court Opinion, 1/24/13, at 7. Father contends that the trial court abused its discretion because of a lack of evidence that the Canadian courts could not expeditiously handle the matter. However, it only requires common sense for a trial court to conclude that an issue will be resolved more expeditiously in a forum where proceedings have already commenced and where the trial court has held hearings on the child custody dispute than a forum where proceedings have not commenced and the trial court would have to learn the case anew. Father could have presented evidence that, despite these issues, the Canadian courts could handle the matter in a more expeditious fashion. He failed to do so. Accordingly, we conclude that the trial court did not abuse its discretion in concluding that this factor weighed in favor of it exercising its jurisdiction in this matter.

As to the eighth factor, the familiarity of the trial court with the facts and issues, the trial court found that it "is familiar with the issues based upon its prior hear-

ings." Trial Court Opinion, 1/24/13, at 7. Father contends that this finding is an abuse of discretion because most of the hearings were held before a special master. Although the trial court has not personally conducted all of the hearings in this matter, we agree that the trial court has grown very familiar with the facts and issues in this case. Thus, we conclude that the trial court's determination that this factor weighed in favor of exercising jurisdiction was not an abuse of discretion.

Although we have concluded that the trial court abused its discretion when considering one of the eight factors, we conclude that six factors weigh in favor of the trial court exercising its jurisdiction in this matter and that two factors are neutral. None of the eight enumerated factors weigh in favor of the trial court relinquishing jurisdiction. Thus, the trial court did not abuse its discretion in determining that Mercer County is not an inconvenient forum. Accordingly, the trial court did not abuse its discretion in denying Father's request to relinquish jurisdiction pursuant to section 5427.

In sum, we hold that a trial court's section 5422 analysis is subject to *de novo* review. We also hold that a forum selection clause may not be considered when making a section 5422 determination. We hold that the determination must be made based upon the factual circumstances as they existed at the time a request for modification has been filed. Based upon the facts in this case, we conclude that the trial court possessed exclusive, continuing jurisdiction under section 5422. We also conclude that Father's argument that the trial court abused its discretion in determining that the Court of Common Pleas of Mercer County was not an inconvenient forum is without merit. Accordingly, we affirm the order of the trial court denying Father's motion to relinquish jurisdiction.

Order affirmed.