J-S21017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.F. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.S. AND D. AND P.M. | : | |
| | : | |
| | : | No. 30 WDA 2020 |
| APPEAL OF: D. AND P.M. | : | |

Appeal from the Order Entered September 19, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD09-000772-017

BEFORE:  LAZARUS, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 16, 2020**

Appellants, D. and P.M. (collectively, "Paternal Grandparents"), appeal from the September 19, 2019 Order[1] that, *inter alia*, granted sole legal and physical custody of A.F. ("Child") to Child's mother, A.F. ("Mother"), and awarded Paternal Grandparents supervised phone contact with Child.  Paternal Grandparents challenge the trial court's continuing and exclusive jurisdiction to make a custody determination under Section 5422 of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S. § 5401-5482, as well as the trial court's custody award.  Upon careful review, we affirm.

_____

[1] The Order is dated September 16, 2019, but was not docketed until September 19, 2019.

**PROCEDURAL AND FACTUAL HISTORY**

In its September 19, 2019 Opinion, the trial court set forth a detailed procedural and factual history, which we adopt for purposes of this appeal.[2] **See** Memorandum and Order, 9/19/19, at 2-5. Mother and A.S. ("Father") are parents to Child, who was born in February 2012. In sum, Mother and Father were never married, have always had a contentious relationship, and both have a history of substance abuse. Father also has a criminal history.

On September 5, 2013, Father filed a Complaint for Confirmation of Custody alleging that Mother was homeless and struggling with substance abuse, and that he had been Child's primary caretaker since June 2013. On the same day, the trial court issued an Order granting Father primary physical custody of Child and directing any party or parent seeking relocation to file a petition for relocation as required by Section 5337 of the Custody Act.[3] Shortly after the trial court awarded Father custody of Child, Paternal Grandparents took Child to live with them in Arizona, at Father's request.[4] Neither Father nor Paternal Grandparents notified Mother of Child's relocation. Father did not file a petition for relocation with the court.

---

[2] We note that this is a highly litigious custody dispute where parties have filed numerous Petitions for Special Relief and Contempt, and the trial court has issued numerous interim Orders. We highlight the procedural and factual history most relevant to this appeal.

[3] 23 Pa.C.S. § 5337.

[4] Despite Father's averments to the trial court, he was unable to care for Child due to his recent release from prison and unsuitable housing.

- 2 -

On December 21, 2015, Mother filed a Petition to Modify Custody and an Emergency Petition for Special Relief, alleging that Child was living in Arizona with Paternal Grandmother, without Mother's consent and in violation of the September 5, 2013 Custody Order. On December 22, 2015, the trial court granted the Emergency Petition, ordered Child to be returned to Pennsylvania, and ordered the parties to follow the existing custody Order pending further order of the court.

On July 5, 2016, after Father failed to appear for several scheduled conciliation conferences, the trial court issued an Order awarding Mother daily phone calls and alternating weekend visitation with Child pending trial.

On September 26, 2016, after conciliation, the trial court issued an interim Order awarding Father sole legal custody, and both parties shared physical custody, with Mother exercising custody of Child every other weekend and Wednesday evenings. The Order further stated that Child shall not leave the Commonwealth of Pennsylvania.

On October 13, 2016, Mother filed a Petition for Contempt alleging Child had remained in Arizona and Father was not complying with the September 26, 2016 Custody Order. On November 17, 2016, after a hearing, the trial court found Father in contempt of several prior custody orders. The court ordered Father incarcerated for 30 days, or until he was able to pay fines. The court further ordered Father to arrange the return of Child to Pennsylvania immediately.

On February 27, 2017, in response to Paternal Grandparent's filing a Petition to Involuntarily Terminate Mother's Rights in Arizona, the trial court issued an Order stating that Pennsylvania has exclusive and continuing jurisdiction over the custody matter. The court, once again, ordered Child to be returned to Pennsylvania.

On March 7, 2017, the trial court issued an Order stating that Child shall be returned to Pennsylvania within 10 days.[5] In response, on March 20, 2017, Paternal Grandparents filed a Complaint in Custody in Pennsylvania seeking primary physical custody of Child.

On November 20, 2017, the trial court scheduled a custody hearing to take place in January 2018, ordered Paternal Grandparents and Child to appear at the hearing, and ordered Mother to have daily electronic contact with Child, who remained in Arizona.

On January 10, 2018, after Paternal Grandparents failed to appear at the scheduled hearing with Child, the trial court issued an interim Order which awarded Mother sole legal and physical custody of Child, effective immediately, and directed local law enforcement in Arizona to ensure that Paternal Grandparents turned over custody of Child to Mother.

_____

[5] The Order also stated that if Paternal Grandmother failed to file a custody action within 10 days, Child shall be returned directly to Mother's custody. However, if Paternal Grandmother did file a custody action, then Paternal Grandmother "shall make Child available for reunification with Mother in [Pennsylvania] every third weekend beginning [March 30, 2017.]" Order, 3/7/17.

Paternal Grandparents and Father filed multiple Emergency Petitions for Special Relief, which the trial court denied. Mother traveled to Arizona and took Child into her custody on January 10, 2018. Since that date, Child has remained in Mother's custody.

In March 2018, following judicial conciliation, the trial court ordered all parties to submit to psychological evaluations, awarded Paternal Grandparents phone contact with Child, and awarded Father supervised visits and phone contact with Child.

On August 15 and 16, 2019, the trial court held a custody hearing. The court heard testimony from Barbara Grimm, staff member at Light of Life treatment facility, Mother; R.M., Sr., Mother's uncle ("Maternal Uncle"); C.M., Mother's aunt ("Maternal Aunt"); D.F., Mother's stepmother ("Stepmother"); Dr. Beth Bliss, an expert in psychology; Paternal Grandmother; Paternal Step-Grandfather; Father; and Child.

Ms. Grimm testified that Mother successfully completed and was fully compliant with the Family Assistance Program at Light of Life, an intense homeless and addiction treatment facility that addresses addiction, parenting, and needs of children. N.T. Hearing, 8/15/19, at 7-9.

Mother testified that she has been sober since August 26, 2014, is employed at a restaurant and is starting school to become a nurse, has family support, and lives with and cares for her three daughters, including Child and Child's 12-year-old and 2-year-old half-sisters. *Id*. at 15-35. Mother admitted to her mistakes in the past, including substance abuse and leaving

Child in the care of others while she attempted to get treatment. *Id*. at 36-45, 57-58. Mother stated that Father did not inform her or obtain her consent when he sent Child to Arizona. *Id.* at 21.

Mother testified that she facilitates phone conversations between Child and Paternal Grandparents, but they make Child anxious because the Paternal Grandparents make disparaging comments about Mother. *Id*. at 28-30. Mother explained that Child's anxiety has manifested physical symptoms, and that Child began "picking" her face, wetting herself, and having problems with digestion; Mother sought medical treatment and counseling. *Id.* at 28-30. Mother testified that her relationship with Paternal Grandparents is "[t]errible." *Id.* at 27. Mother explained that Paternal Grandparents scream at her, call her names, call the police to check on Child, tell Child that Mother abandoned her and that they are her parents. *Id*. at 27-35. Mother further testified that she is open to Paternal Grandparents being involved in Child's life if they change their behavior and act appropriately with "love and affection." *Id.* at 58.

Maternal Uncle, Maternal Aunt, and Stepmother all testified that they observed Mother when she was actively abusing drugs, that she has made an incredible turnaround during her sobriety, that Mother is a great parent to her daughters, that Mother loves Child, and that Child is happy. *Id*. at 67-111. All three witnesses also testified that they have observed Child experiencing anxiety during phone conversations with Paternal Grandparents while in their care. *Id.*

Paternal Grandmother testified that she started caring for Child at Father's request in September 2013, when Child was 18 months old, after she learned that Mother had left Child "with a stranger at an AA meeting" and Father was living in a "three-quarters house" after being released from prison. *Id*. at 116-119. Paternal Grandmother bought clothing, supplies, and furniture, and moved into a new apartment with a bedroom for Child. *Id*. 120-23

Paternal Grandmother testified that she brought Child back to Pittsburgh in December 2015 for a few months to stay with Father and Child had some court-ordered supervised visits with Mother. *Id*. at 122-25. A few months later, Father asked Paternal Grandmother to take Child back to Arizona, where Child remained until 2018. *Id*. at 126. Paternal Grandmother admitted to knowing that there was a visitation order in place when she took Child back to Arizona. *Id*. at 179. Paternal Grandmother denied knowing that the trial court issued numerous orders compelling Child to return to Pennsylvania. *Id.* at 126-128.

Paternal Grandmother testified that Mother does not allow regular phone contact with Child, always monitors the phone calls on speaker, controls when the phone calls occur, blocked Paternal Grandmother's phone number from incoming calls, and often hangs up in the middle of Paternal Grandmother and Child's conversation. *Id*. at 132-33. Paternal Grandmother denied saying anything about Mother in front of Child, but admitted to getting loud during confrontations with Mother, texting her "things[,]" and having animosity

towards Mother "for how I'm treated.  She acts like we're the bad guys."  *Id*. at 138, 168-69.

Paternal Grandmother testified that, in her care, Child was happy, enjoyed school, made many friends, and had stability, family and love.  *Id*. 146-150, 156.  She explained that Child required therapy because Child was scared and starting wetting herself after police showed up at Paternal Grandparent's house in response to Mother's claim that Child was kidnapped. *Id*. at 143-144.

Paternal Step-Grandfather testified that he loved having Child in his home and he misses and loves Child.  *Id*. at 206, 208, 211.  He described that he would take Child to the park, cuddle with her, and play counting games with her.  *Id*. at 206-07.  Paternal Grandfather explained that the phone calls with Child are limited, supervised, and sometimes cut short.  *Id*. at 208-09. Paternal Grandfather testified that he does not have conflict with Mother.  *Id*. at 212.

Dr. Bliss testified that she interviewed all the parties and conducted observations in Mother and Father's home. N.T. Trial 8/16/19, at 4-5.  Dr. Bliss testified that in her opinion, to a reasonable degree of scientific certainty, Child should remain in Mother's physical custody and have continued contact with Father and Paternal Grandparents.  *Id*. at 22.  Dr. Bliss stressed the importance of all parties not talking negatively about each other in front of Child.  *Id*.

Relevant to this appeal, Father testified that when Child was approximately 18 months old and abandoned by Mother, he was not in a position to care for Child and asked Paternal Grandparents to take Child to Arizona to care for Child. *Id.* at 53. Father explained that he maintained a bond with Child, initially engaged in "daily" telephone contact with Child, spent considerable amounts of time with Child when Paternal Grandmother "intermittently" brought Child back to Pittsburgh, and "at one point he exercised custody for approximately three months by himself without [Paternal Grandparents] present . . . and participated in all of the primary caregiving activities." *Id.* at 54-55, 66. Father also testified that his preference was for Paternal Grandparents to care for Child. *Id*. at 56-57.

Child testified *in camera*. Child testified that it is "really fun" living with Mother and her sisters, that she feels the most comfortable there, and she wants to stay there. *Id*. at 79. Child testified that she talks to Paternal Grandparents on the phone, but sometimes it makes her uncomfortable because they say "all types of mean stuff" about Mother and her sisters. *Id*. at 85-86. Child testified that, if she wanted to, Mother would let her talk on the phone with Paternal Grandparents every day. *Id.* at 86-87. Child testified that she would like to visit Paternal Grandparents "[o]nly for a day" in Pennsylvania instead of Arizona so they could not keep her in Arizona. *Id*. at 87-88. Child stated that she wants to live at Mother's house and see Father, and that she did not want to talk to Paternal Grandparents more often on the phone. *Id*. at 89-90.

On September 19, 2019, the trial court issued a Memorandum and Order, which awarded Mother sole legal and physical custody of Child, awarded Paternal Grandparents supervised phone contact whenever Child initiates and during Father's visits with Child, and awarded Father supervised visitation upon completion of recommended drug and alcohol treatment and parenting classes. Memorandum and Order, 9/19/19, at 13-16.

Paternal Grandparents filed a timely appeal. On December 19, 2019, Paternal Grandparents filed a Concise Statement of Errors.[6] The trial court filed a responsive Opinion.

**ISSUES RAISED ON APPEAL**

Paternal Grandparents raise the following issues for our review:

A. Did the lower court possess exclusive, continuing jurisdiction under the UCCJEA, when the subject child had been residing in another state for a period of over two years with [Paternal Grandparents], rather than with the biological parents who were the parties to the initial court order?

B. Alternatively, did the lower court err by entering a custody order that effectively eliminated all contact with the subject child and the paternal grandparents who had raised her for the majority of her life?

Appellants' Brief at 2.

---

[6] Paternal Grandparents failed to comply with Pa.R.A.P 1925(a)(2)(i) and file the Concise Statement of Errors contemporaneously with the Notice of Appeal, resulting in a defective Notice of Appeal. *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that noncompliance with Pa.R.P. 1925(a)(2)(i) results in a defective notice of appeal and the disposition of the defective notice of appeal will be decided on a case by case basis). Because the late filing of the Concise Statement of Errors did not result in prejudice to other parties, we decline to quash or dismiss this appeal. *See id.*

**LEGAL ANALYSIS**

**The Trial Court Had Continuing and Exclusive Jurisdiction Pursuant to Section 5422 of the UCCJEA**

In their first issue, Paternal Grandparents aver that the trial court did not have continuing and exclusive jurisdiction over the custody matter pursuant to Section 5422 of the UCCJEA. Appellants' Brief at 5 (citing 23 Pa.C.S. § 5422). Paternal Grandparents concede that the trial court had jurisdiction to enter the initial custody Order, but argue that when Mother filed the Petition to Modify Custody, Child did not have significant connections to Pennsylvania because she was living in Arizona and her parents were not "exercising any parenting time within Pennsylvania." Therefore, Paternal Grandparents argue, the trial court lacked jurisdiction to decide the custody matter. *Id.* We disagree.

A trial court's decision that it retains exclusive, continuing jurisdiction over a custody determination pursuant to Section 5422 implicates the court's subject matter jurisdiction and is purely a question of law. *S.K.C. v. J.L.C.*, 94 A.3d 402, 408 (Pa. Super. 2014). Accordingly, this Court's standard of review is *de novo* and our scope of review is plenary. *Id.*

This Court has explained, "[t]he purpose of the UCCJEA is to avoid jurisdictional competition, promote cooperation between courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states." *A.L.-S. v. B.S.*, 117 A.3d 352, 356 (Pa. Super. 2015). Section 5422 provides, in relevant

part, that a court that has made a initial child custody determination has exclusive, continuing jurisdiction over the determination until "a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships." 23 Pa.C.S. § 5422(a)(1).

The Section 5422 comments explain, "even if the child has acquired a new home state, the original decree state retains exclusive, continuing jurisdiction, so long as the general requisites of the "substantial connection" jurisdiction provisions of [Section 5421] are met. 23 Pa.C.S. § 5422 cmt. Moreover, "[i]f the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist." *Id.*

"[A] significant connection exists where one parent resides and exercises parenting time in the state and maintains a meaningful relationship with the child." *S.K.C.*, 94 A.3d at 412 (citation omitted). Nevertheless, in a situation where a parent fails to exercise parenting time with a child in Pennsylvania due to the other parent's contemptuous behavior, this Court has declined to find a lack of significant connection and, consequently, "reward" that contempt. *Id*. at 412–13. In this situation, the Court has unequivocally

stated, "we refuse to incentivize contemptuous behavior on the part of a litigant. Contemptuous behavior should be punished, not rewarded. To reward contempt would undermine the very nature of the judicial process." *Id.* Finally, "when making a determination under [S]ection 5422, the trial court must rely upon the factual circumstances as they existed when the modification petition was filed." *T.D. v. M.H.*, 219 A.3d 1190, 1197 (Pa. Super. 2019) (citation omitted).

It is undisputed that the trial court had jurisdiction to make the initial custody determination in this case on September 3, 2013. On December 21, 2015, Mother filed a Petition to Modify Custody, which resulted in the September 19, 2019 final custody Order that is the subject of this appeal. In the Petition, Mother averred that Child was living in Arizona without Mother's consent and in violation of the existing custody Order. At trial, Father and Paternal Grandmother's testimony confirmed this allegation. However, Father also testified that he participated in daily phone conversations with Child, spent considerable amounts of time with Child on her trips back to Pennsylvania, and cared for Child for several months in Pennsylvania. Accordingly, because Father resided in Pennsylvania, maintained a meaningful

relationship with Child, and exercised parenting time, a "significant connection" to Pennsylvania existed at the time that Mother filed her Petition.[7]

Accordingly, because Child had a "significant connection" to Pennsylvania, the trial court had continuing and exclusive jurisdiction over this custody matter despite Child residing in Arizona in violation of court Orders.

**The Trial Court Did Not Abuse its Discretion When it Awarded Paternal Grandparents Supervised Phone Contact with Child**

Paternal Grandparents next aver that the trial court erred when it awarded them phone contact with Child during Father's supervised visitation or at Child's discretion. Appellants' Brief at 12. Paternal Grandparents argue that by "making their visitation subsidiary to that of the Father, the Father's failure to adhere to the requirements of the order will effectively terminate" their relationship with Child. *Id.* Paternal Grandparents argue that the trial court failed to give sufficient weight to their years of raising Child, Mother's abandonment of Child, Mother's efforts to preclude Child from contacting them, and Mother's failure to allow Child to participate in court-ordered visitation with them during the pending litigation. *Id.* at 13. In turn, Paternal Grandparents assert that the trial court gave too much weight to Child's

---

[7] Moreover, we decline to find that Mother failed to exercise parenting time in Pennsylvania and, in doing so, reward Father's contemptuous and egregious behavior of removing child from Pennsylvania in violation of the existing custody Order.

preferences, the contents of their phone conversations with Child, the negative things they said, and alleged efforts to keep Child away from Mother. *Id.* Paternal Grandparents are not entitled to relief.[8]

This Court reviews a custody determination for an abuse of discretion. *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *Id.* (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Id.*

Further, our scope of review is broad, but we are "bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the

---

[8] Paternal Grandparents also make the argument, for the first time on appeal, that the trial court "misapplied the evidentiary burden" when awarding Paternal Grandparents supervised visitation. Appellants' Brief at 12. This argument is waived**. *See* Pa.R.A.P 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

witnesses." **K.T. v. L.S.**, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere in the trial court's weight determinations only where the "custody order is manifestly unreasonable as shown by the evidence of record." **Saintz**, 902 A.2d at 512 (citation omitted).

The Child Custody Act, 23 Pa.C.S. §§ 5321-5340, requires a trial court to consider all of the Section 5328(a) best interests factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a). It is well-settled that "[t]he paramount concern in child custody cases is the best interests of the child." **C.G. v. J.H.**, 193 A.3d 891, 909 (Pa. 2018). "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." **M.J.N. v. J.K.**, 169 A.3d 108, 112 (Pa. Super. 2017).

Our review of the record reveals that the trial court engaged in an analysis of each of the Section 5328 custody factors and made specific findings regarding each factor, which the record supports. **See** Memorandum and Order, 9/19/19, at 2-12. The trial court determined, based on its consideration of those custody factors, that it was in Child's best interest to award sole legal and physical custody to Mother, conditional visitation to Father, and supervised phone contact to Paternal Grandparents. Here, the Paternal Grandparents do not challenge the court's application of the custody factors; rather, they challenge the weight the court gave to the evidence. Regarding Paternal Grandparents, the trial court opined:

[T]he evidence presented at trial on behalf of the [Paternal Grandparents] fell far short of clear and convincing such that this Court's decision to award Mother with sole legal and physical custody would qualify as error. The record was replete with evidence to support this [c]ourt's determination that it would not be in [Child]'s best interest to have awarded PGP's with any physical parenting time, the least of which included Paternal Grandmother's absurd and upsetting phone calls to [Child] in which she would tell [Child] that she, not Mother, was her mother and the Mother had abandoned her, something this [c]ourt determined had no legitimate purpose and borderlined as emotionally abusive, as well as [Child]'s fear that if she visited Arizona that [Paternal Grandparents] would not allow her to return to Pennsylvania.

Essentially, the [Paternal] Grandparents argue that they should get credit for raising [Child] for several years and that this credit should outweigh their admitted bad behaviors; that this [c]ourt should have given more weight to Mother's bad behaviors and past substance abuse history. This argument is flawed, as it would inherently relieve them of the aforementioned heavy burden set forth in § 5327(b) and, instead, place that burden upon Mother.

Trial Ct. Op., filed 1/31/20, at 17-18.

The record supports the trial court's findings. We decline to usurp the credibility determinations of the trial court or reweigh the evidence. Accordingly, we find no abuse of discretion.

**CONCLUSION**

In sum, the trial court had continuing and exclusive jurisdiction over this custody dispute, and did not abuse its discretion when it awarded Mother sole legal and physical custody, Father conditional partial custody, and Paternal Grandparents supervised phone contact with Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2020